JS-6

1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   DOLORES CALDERON and JASON              Case No.:  2:23–cv–03382–MEMF–MRWx
     CALDERON, individually, and on behalf of all
12   others similarly situated,              **ORDER GRANTING PLAINTIFFS'**
                                             **MOTION TO REMAND AND REQUEST**
13                        Plaintiffs,        **FOR JUDICIAL NOTICE [ECF NOS. 13, 20]**

14              v.

15

16   BIO-MEDICAL APPLICATIONS OF
     MISSION HILLS, INC. DBA FRESENIUS
17   KIDNEY CARE MISSION HILLS, a Delaware
     corporation; BIO-MEDICAL APPLICATIONS
18   OF CALIFORNIA, INC., a Delaware
     corporation; FRESENIUS MANAGEMENT
19   SERVICES, INC. DBA FRESENIUS
     MEDICAL CARE NORTH AMERICA, a
20   Delaware corporation; and DOES 1 through 10,
     inclusive,
21

22                        Defendants.

23

24        Before the Court is a Motion to Remand the Action to State Court (ECF No. 13) and Request

25   for Judicial Notice (ECF No. 20) filed by Plaintiffs Dolores Calderon and Jason Calderon. For the

26   reasons stated herein, the Court GRANTS the Motion.

27

28   / / /

1

**BACKGROUND**

2    **I.**    **Factual Background[1]**

3         Plaintiff Dolores Calderon and Plaintiff Jason Calderon (collectively, "Plaintiffs") are

4    individuals who reside in Los Angeles County. FAC ¶¶ 7–8. Defendant Bio-Medical Applications of

5    Missions Hills, Inc.; Defendant Bio-Medical Applications of California, Inc.; and Defendant

6    Fresenius Management Services, Inc. d/b/a Fresenius Medical Care North America ("Fresenius")

7    (collectively, "Defendants") are entities that operate in Los Angeles County. *Id.* ¶ 10.

8         Defendants employed Plaintiffs from 2007 to 2020. *Id.* ¶¶ 7–8. Defendants committed

9    various violations of employment law while employing Plaintiffs, including, at times, failing to pay

10   overtime, failing to pay for all hours worked, failing to provide meal breaks, failing to authorize rest

11   breaks, failing to timely pay, and failing to provide wage statements. *Id.* ¶¶ 14–21.

12   **II.**    **Procedural History**

13        Plaintiffs filed suit in Los Angeles County Superior Court on July 28, 2022. *See* ECF No. 1

14   ("Notice of Removal" or "NOR") at 1. Plaintiffs filed their FAC on April 3, 2023. *See* FAC.

15   Plaintiffs bring seven causes of action based on California law: (1) failure to pay minimum and

16   straight time wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure

17   to authorize and permit rest periods; (5) failure to timely pay final wages at termination; (6) failure

18   to provide accurate itemized wage statement; and (7) unfair business practices. *See* FAC ¶¶ 31–88.

19   Plaintiffs also seek attorneys' fees. *See id.* at Prayer for Relief.

20        Defendants removed the action to this Court on May 3, 2023. *See* NOR. Alongside their

21   Notice of Removal, Defendants filed a declaration from Martha D'Sanchez, Director of Employee

22   Relations for Fresenius with facts that purportedly support the basis for federal jurisdiction, among

23   other filings. *See* ECF No. 1-7 ("D'Sanchez Declaration" or "D'Sanchez Decl.").

24

25

26   _____

27   [1] Except as otherwise indicated, the following factual background is derived from Plaintiffs' First Amended
     Complaint. See ECF No. 1-4 at 31–55 ("FAC"). For the purposes of this Motion, the Court treats these factual
28   allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these
     allegations and is therefore not—at this stage—finding that they are true.

2

1    Plaintiffs filed this Motion to Remand on June 2, 2023. ECF No. 13 ("Motion" or "Mot.").

2    Plaintiffs also filed Evidentiary Objections to the D'Sanchez Declaration. ECF No. 13-2

3    ("Objections" or "Obj."). Defendants filed an Opposition to the Motion on June 16, 2023. ECF No.

4    16 ("Opposition" or "Opp'n"). Defendants also filed a response to Plaintiffs' Objections. ECF No.

5    17. On June 23, 2023, Plaintiffs filed a Reply in support of the Motion (ECF No. 19, "Reply") and a

6    Request for Judicial Notice in Support of Reply (ECF No. 20, "RJN").

7                          **REQUEST FOR JUDICIAL NOTICE**

8    **I.      Applicable Law**

9            A court may take judicial notice of facts not subject to reasonable dispute where the facts

10   "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

11   readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.

12   201(b). Under this standard, courts may take judicial notice of "undisputed matters of public record,"

13   but generally may not take judicial notice of "disputed facts stated in public records." *Lee v. City of*

14   *Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of*

15   *Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Public records, including documents on file in

16   federal court, are appropriate for judicial notice. *See Harris v. County of Orange*, 682 F.3d 1126,

17   1132–33 (9th Cir. 2012); *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).

18   **II.     Discussion**

19           Here, Plaintiffs request that the Court take judicial notice of various complaints filed in other

20   employment cases. RJN at 1. The Court concludes that these public records are appropriate materials

21   for judicial notice and takes judicial notice of the existence of the documents; however, the Court

22   does not take judicial notice of any disputed facts therein. *See Harris*, 682 F.3d at 1132; *Lee*, 250

23   F.3d at 690.

24                             **MOTION TO DISMISS**

25   **I.      Applicable Law**

26           "Federal courts are courts of limited jurisdiction," and can only hear cases where there is a

27   valid basis for federal jurisdiction. *Richardson v. United States*, 943 F.2d 1107, 1112 (9th Cir. 1991).

28   Although there are several possible bases for federal jurisdiction, only one is relevant to this Order:

1    the diversity jurisdiction provisions of the Class Action Fairness Act of 2005 ("CAFA"). *See* 28

2    U.S.C. § 1332(d)(2). Federal district courts have jurisdiction over class action lawsuits where the

3    amount in controversy exceeds $5,000,000 and minimal diversity requirements are met.[2] *See id.*

4         When a plaintiff files an action in state court over which federal courts might have

5    jurisdiction, the defendant may remove the action to federal court. *See* 28 U.S.C. § 1446. When the

6    defendant does so pursuant to CAFA, the defendant must make a "plausible allegation that the

7    amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co.,*

8    *LLC v. Owens*, 574 U.S. 81, 89 (2014). If the plaintiff contests whether the amount of controversy is

9    sufficient for jurisdiction, "evidence establishing the amount is required." *Id.*

10        The defendant who removed the case bears the burden "to show the amount in controversy

11   by a preponderance of the evidence." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994

12   (9th Cir. 2022). However, although there is a presumption against removal in the context of some

13   other bases for jurisdiction, there is "no antiremoval presumption" in cases invoking CAFA

14   jurisdiction. *Dart Cherokee*, 574 U.S. at 89. In other words, the Defendant bears the burden of

15   showing removal is proper, but there is no "thumb on the scale against removal." *Jauregui*, 28 F.4th

16   at 994.

17        Rather, the procedure is that "[t]he parties may submit evidence outside the complaint,

18   including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the

19   amount in controversy at the time of removal.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197

20   (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (internal

21   quotation marks omitted)).[3] In determining the amount in controversy, the defendant may rely on "a

22   _____

23   [2] The diversity requirements of CAFA are not at issue in this Order, as all parties appear to agree that these
     requirements are met, and so the Court will not explain these requirements in detail. *See* 28 U.S.C. §§
24   1332(d)(2)(A)–(C).

25   [3] Both Plaintiffs and Defendants discussed whether the challenge to jurisdiction here should be construed as
     facial or factual. *See* Opp'n at 6–8; Reply at 2. This distinction is not relevant when analyzing removal
26   pursuant to CAFA. *See Dart Cherokee*, 574 U.S. at 84–96 (laying out standard for CAFA removal challenges
     and not mentioning factual vs. facial distinction); *Jauregui*, 28 F.4th at 992–96 (same). Furthermore,
27   Defendants' assertions that Plaintiffs do not challenge the Defendants' assertions or the rationality of their
     assumptions but argue only that the assumptions were not supported with summary-judgment-type evidence,

28

1    chain of reasoning that includes assumptions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920,

2    925 (9th Cir. 2019). "An assumption may be reasonable if it is founded on the allegations of the

3    complaint." *Id.* But, "a defendant cannot establish removal jurisdiction by mere speculation and

4    conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197.

5         It is settled law in the Ninth Circuit that CAFA's provisions should be interpreted broadly

6    with a "strong preference" for class actions to be heard in federal court *when properly removed*.

7    *Jauregui*, 28 F.4th at 993. And in the early stages of litigation, a defendant has no choice but to rely

8    on assumptions when calculating an amount in controversy using the plaintiff's complaint before

9    resolving any disputes over key facts. *Id.* As a result, it is inappropriate to demand exact certainty

10   from a defendant in their calculations of the amount in controversy. *Id.* However, "[w]here a

11   defendant's assumption is unreasonable on its face without comparison to a better alternative, a

12   district court may be justified in simply rejecting that assumption and concluding that the defendant

13   failed to meet its burden." *Id.* at 996.

14        On the other hand, where "a defendant's assumption is rejected is because a different, better

15   assumption is identified . . . the district court should consider the claim under the better

16   assumption—not just zero-out the claim." *Id.* In those circumstances, the Court should identify,

17   applying a preponderance of the evidence standard, the best possible assumptions, and use these to

18   calculate the total amount in controversy. *See id.*

19        If the total amount is found to be greater than $5,000,000, the action will remain in federal

20   court. *See* 28 U.S.C. § 1332(d)(2). If not, it should be remanded to state court. *See id.*

21   **II.   Discussion**

22        Defendants estimated the amount in controversy by first determining the universe of

23   employees covered by the relevant time period—based upon their business records—then making

24   certain assumptions about the violation rates for each of the Plaintiffs' causes of actions—based

25

26

27   _____

28   *see* Opp'n at 2, 6, is incorrect. *See, e.g.*, Motion at 7 ("Defendant's assumptions are unreasonable, and again, based on language not found in the FAC.").

upon the language in the FAC. From there, they applied simple arithmetic to arrive at the final estimate.

### A. Defendants' calculations regarding the universe of possible Class Members is supported by substantial evidence.

Defendants based their estimate of the amount in controversy in part on certain facts regarding the universe of possible Class Members. The Court finds that these proposed facts are based on appropriate, "summary-judgment-type" evidence. Those facts are as follows: Defendants employed approximately 4,034 employees during the relevant time period.[4] *See* NOR at 6 (citing D'Sanchez Decl. ¶ 10a). These employees were paid "an average of approximately $31.21 per hour,"[5] and worked three to five 8-hour shifts per week. *Id.* at 8 (citing D'Sanchez Decl. ¶ 10b). For the time period of March 21, 2019, to April 4, 2023, these employees worked an average of 71 workweeks[6] each. *Id.* (citing D'Sanchez Decl. ¶ 10c). For all subsequent calculations, this number of workweeks was discounted at a 40/52 ratio to account for vacations, holidays, and other time off. *See id.* at 8–9, 10, 11.

These facts are well supported by competent evidence—namely a declaration under penalty of perjury by an individual who is familiar with the operations of the Defendants and their business records and provided her declaration based upon her personal knowledge.

*/ / /*

---

[4] Plaintiffs object to this estimate on the bases of the hearsay rule and best evidence rule. Obj. ¶ 4. This objection is OVERRRULED. D'Sanchez's testimony regarding the number of employees is based on D'Sanchez's personal knowledge based on her "review of the BMA California Records." D'Sanchez Decl. ¶ 10a. It is not hearsay. Those records appear to be records of a regularly conducted activity, and so are not excluded by the hearsay rule. *See* Fed. R. Evid. 803(6). The best evidence rule does not require submission of payroll documents to prove a number of employees. *See* Fed. R. Evid. 1003 Advisory Committee's Notes ("payment may be proved without producing the written receipt which was given").

[5] Plaintiffs object to this estimate on the bases of the hearsay rule and best evidence rule. Obj. ¶ 8. For similar reasons to those described above, this objection is OVERRULED.

[6] Plaintiffs object to this estimate on the bases of relevance, the hearsay rule, and the best evidence rule. Obj. ¶ 10. For similar reasons to those described above, this objection is OVERRULED.

**B. Defendants' assumptions regarding amount in controversy are unreasonable and therefore they have failed to show that the amount in controversy is over $5,000,000.**

Having determined the full universe of possible Class Members, the Defendants proceed to make certain assumptions about the violation rate—that is, *how many* employees suffered a given violation, and *how often* those employees suffered that violation. Defendants appear to acknowledge that the D'Sanchez Declaration provides no support for the violation rate. Rather, the Defendants point to the language of the FAC to support their assumptions. The Court finds that the language pointed to by the Defendants is too slim a reed upon which to rest their assumptions, and therefore they have failed to meet their burden.

For the second cause of action (Failure to Pay Overtime Wages), Defendants assumed a 75% violation rate, that is, that 75% of employees suffered overtime violations. *See id.* at 8–9. Thus, Defendants assumed 3,025 of the 4,034 employees suffered overtime violations. *See id.* Defendants then assumed that for the 75% of employees who suffered violations, the average frequency was one hour of overtime every two weeks (.5 per week). *See id.* at 8. Defendants multiplied the number of affected employees (3,025) by the penalty for .5 hours of missed overtime per week ($46.81, or 1.5 x $31.21), and then multiplied this number by the discounted number of workweeks (71 x 40/52). *See id.* at 9. This resulted in a total amount in controversy of $3,866,776 for the second cause of action. *See id.*

For the third cause of action (Failure to Provide Meal Periods), Defendants again assumed 75% of employees were affected, amounting to 3,025 in total. *See id.* at 10. Defendants assumed one missed meal period violation per week, and again discounted the number of weeks by 40/52. *See id.* Thus, Defendants multiplied the number of affected employees (3,025) by the penalty for a missed meal period ($31.21), and then multiplied this number by the discounted number of workweeks (71 x 40/52). *See id.* This resulted in a total amount in controversy of $5,156,252 for the third cause of action. *See id.*

For the fourth cause of action (Failure to Authorize and Permit Rest Periods), Defendants again assumed 75% of employees were affected, amounting to 3,025 employees in total. *See id.* at 11. Defendants assumed one missed rest period violation per week, and again discounted the number

of weeks by 40/52. *See id.* Thus, Defendants multiplied the number of affected employees (3,025) by the penalty for a missed rest break ($31.21), and then multiplied this number by the discounted number of workweeks (71 x 40/52). *See id.* This resulted in a total of $5,156,252 for the third cause of action. *See id.*

The assumptions and calculations above are summarized in the table below. Defendants did not provide detailed estimates for other causes of action in their Notice of Removal, having shown that the total for these three claims is well over the $5,000,000 threshold per Defendants' estimates.

| Cause of Action Number | Cause of Action | Affected Employee Percentage | Violations per week | Penalty per Violation | Total Amount in Controversy |
|---|---|---|---|---|---|
| 2 | Failure to Pay Overtime Wages | 75% | 0.5 | $46.81 | $3,866,776.00 |
| 3 | Failure to Provide Meal Periods | 75% | 1 | $31.21 | $5,156,252.00 |
| 4 | Failure to Authorize and Permit Rest Periods | 75% | 1 | $31.21 | $5,156,252.00 |
| Total | | | | | $14,179,280 |

Defendants contend that both sets of assumptions—how many employees were affected and how often the affected employees were affected—are based on the language of the FAC. Specifically, the Defendants point to scattered references to "policy" or "practice"[7] as well as language regarding the fact that Defendants made it "impossible" or "impracticable"[8] for employees to take rest and meal breaks. With respect to the "policy" or "practice" language, the Court does not find that this language supports the assumptions. That something is a policy or practice does not provide any indication of how *many* employees it affects or how *often* it affects them.[9] Similarly, looking at the language of the FAC in context, it is not clear that the Plaintiffs are alleging that Defendants made it impossible or impracticable *all the time* for *all employees* to take their rest and meal breaks:

---

[7] *See, e.g.*, Opp'n at 14 (identifying 15 times that these terms were used in the FAC); FAC ¶¶ 1, 5, 6, 20.

[8] *See, e.g.*, Opp'n at 15; FAC ¶¶ 52, 56.

[9] In addition, the Court notes that many of the uses of the term "practice" are used as part of the phrase "unfair business practices," a description of the seventh cause of action under Business & Professions Code Section 17200.

> Despite these legal requirements, Defendants at times failed to provide Plaintiffs and the Class, or some of them, with both meal periods as required by California law. By their failure to permit and authorize Plaintiffs and the Class, or some of them, to take all meal periods as alleged above *(or due to the fact that Defendants made it impossible or impracticable to take these uninterrupted meal periods)*, Defendants willfully violated the processions of California Labor Code § 226.7 and the applicable Wage Orders.

FAC ¶ 52 (emphasis added); see also FAC ¶ 56 (substantially the same). In fact, this language says nothing about *for whom* and *how often* Defendants made it impossible or impracticable to take the required breaks.[10]

Plaintiffs contest both sets of two key assumptions underlying the analysis above: the assumption of a 75% affected employee rate, and the assumptions regarding frequency of violations (.5 hours of overtime per week, one missed meal period per week, and one missed rest period per week). *See* Mot. at 6–12. They point to limiting language in the FAC which the Defendants would have this Court disregard. The rest and meal break allegations quoted above provide a salient example:

> Despite these legal requirements, Defendants *at times* failed to provide Plaintiffs and the Class, or some of them, with both meal periods as required by California law. By their failure to permit and authorize Plaintiffs and the Class, *or some of them*, to take all meal periods as alleged above (or due to the fact that Defendants made it impossible or impracticable to take these uninterrupted meal periods), Defendants willfully violated the processions of California Labor Code § 226.7 and the applicable Wage Orders.

FAC ¶ 52 (emphasis added); see also FAC ¶ 56 (substantially the same). The language "at times" and "some of them," which appears in all of the claims at issue clearly limit the allegations regarding how many employees were affected and how often they were affected. But that language does not support the Defendants' assumptions because the language is not susceptible of a numerical quantification. Defendants' only response is that exactitude is not required. And they are correct. But what the law demands—and therefore this Court must require—is a reasonable basis for the assumptions. "Policy," "practice," "at times," and "some of them" cannot reasonably be read as 75%

---

[10] Defendants also asserted that the commonality and typicality allegations in the FAC, FAC ¶¶ 27-28, further support the reasonableness of the Defendants' assumptions.  But neither commonality nor typicality mean that every issue applies to every class member.  *See* Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 10-C (Class Actions), §§ 10:273 ("Not every issue in the case must be common to all class members."), 10:285 ("The claims of the entire class need not be identical . . . .").

of employees, .5 hours of overtime per week, one missed meal period per week, and one missed rest period per week.

Put another way, the core allegations are open to multiple interpretations, and the Defendants have pointed to nothing making their interpretation more likely than not, which is their burden. For example, with respect to the second cause of action, the FAC alleges that "*[a]t all time* relevant hereto, Plaintiffs and the Class, or *some of them*, have *at times* worked more than eight hours in a workday," and "Defendants failed to pay to Plaintiffs and the Class, or *some of them*, overtime compensation for the hours they worked in excess of the maximum hours permissible by law." FAC ¶¶ 44 (emphasis added), 45 (emphasis added). The FAC further alleges that Defendants' failure to keep records make it "difficult to calculate the *full extent* of overtime compensation." *Id.* ¶ 47 (emphasis added). This language is open to multiple interpretations—one could assume that nearly all employees were affected and violations were frequent for those employees, or that only a few employees were affected and violations were rare for those employees. Similarly, for the third cause of action, the FAC alleges that Defendants "*at times* failed to provide Plaintiffs and the Class, or *some of them*, with both meal periods as required by California law." FAC ¶ 52 (emphasis added). Again, this language is open to multiple interpretations as to the frequency of violations and number of affected employees. Finally, for the fourth cause of the action, the FAC alleges that Defendants "*at times* failed to authorize Plaintiffs and the Class, or *some of them*, to take breaks." FAC ¶ 56 (emphasis added). This too is susceptible to multiple interpretations as to the frequency of violations and number of affected employees.

Although Defendants "must be able to rely on a chain of reasoning that includes assumptions," this is only the case "as long as the reasoning and underlying assumptions are reasonable." *Jauregui*, 28 F.4th at 994. Defendants' underlying assumptions are untethered to the language of the FAC and therefore unreasonable. Although Defendants claim they are taken from the language of the FAC, this Court finds that in reality, they are the equivalent of the "speculation" and "assumptions . . . pulled from thin air" that the Ninth Circuit has prohibited. *See Ibarra*, 775 F.3d at 1197, 1199.

1   As Defendants note in their Opposition, other claims not discussed in detail in the Notice of

2   Removal should also be included in the total.[11] For example, Defendants estimate in their Opposition

3   that the amount in controversy from the fifth cause of action (Failure to Timely Pay Final Wages at

4   Termination) is $18,117,254, based upon a 100% violation rate. *See* Opp'n at 18–19. Similarly,

5   Defendants argue in their Opposition that the request for attorneys' fees will add 25% to the amount

6   in controversy. *See* Opp'n at 19–20. Plaintiffs do not appear to dispute that 25% is the correct

7   percentage to add but dispute the base number that 25% will be added to. *See* Reply at 9 ("Even if

8   the percentage of attorneys' fees used by Defendants is not unreasonable in and of itself, it is applied

9   'to valuations of the claims that are inherently unreasonable.'"). But because the Plaintiffs contest

10  the underlying assumptions and the Court finds the underlying assumptions are unreasonable (in

11  light of the limiting language), the resulting numbers are unsupported.

12  This Court finds that this case presents the very situation discussed in *Jauregui*: "Where a

13  defendant's assumption is *unreasonable on its face* without comparison to a better alternative, a

14  district court may be justified in simply *rejecting that assumption and concluding that the defendant*

15  *failed to meet its burden*." *Jauregui*, 28 F.4th at 996.

16  At the hearing in this matter, counsel for the Defendants pointed to several district court

17  cases finding on similar facts that these assumptions are reasonable. Given that these cases are not

18  binding on this Court and that Plaintiffs can point to several district court cases reaching the opposite

19  conclusion, this argument is ultimately unavailing.

20  Counsel also asserted that the Court's requirement of greater support than the scattered vague

21  terms in the Complaint is contrary to what CAFA intended, because CAFA did not intend to place

22  such an onerous burden on defendants. As counsel explained, thirty days is simply too short a period

23  of time to provide anything more than what the Defendants provided, given the Plaintiffs' "artful

24  pleading" and "squishy language." Unfortunately for the Defendants, however, this Court is limited

---

26  [11] Defendants may submit additional evidence and argument not contained in the Notice of Removal in their
27  Opposition. *See Dart Cherokee*, 574 U.S. at 89 ("a defendant's notice of removal need include only a
    plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing
    the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the
28  defendant's allegation.")

by the plain language of the statute and is bound by Ninth Circuit authority. Neither the statute nor case law permit the Court to relax the applicable requirements under the circumstances presented by this case.

Moreover, it does not appear that the Court's requirement is an onerous one. As at least one other court has found, another approach would be for Defendants to obtain the information needed to show the amount in controversy in state court and seek to remove at that time. *Toribio v. ITT Aerospace Controls LLC*, No. CV 19-5430-GW-JPRX, 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019) ("Faced with a vague pleading, it seems to this Court that the much-more-sensible route would be to try to pin Plaintiff down, in state court (with no one-year time-limit staring Defendants in the face), with respect to what the Complaint's allegations actually mean with respect to violation rates. Perhaps Defendants do this by serving interrogatories or requests for admission, perhaps by deposition, perhaps by moving for a more definite statement. Perhaps they simply get Plaintiff to identify what the violation rates would be for *Plaintiff*, and then use that information as a sample to extrapolate out the calculation for the entire class."). When asked about this at the hearing, counsel for both parties acknowledged that should the Defendants later obtain information showing the amount in controversy, they could attempt removal at that time. *See* 28 U.S.C. § 1446; Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 2D-7 (Time for Removal), §§ 2:3230 ("Where removability is uncertain, *the 30-day period is measured from the point at which defendant had notice that the action is removable . . . .*"); 2:3247.2 ("Uncertainty as to amount in controversy under CAFA: Even where it would be a fair assumption from the named plaintiff's alleged damages to conclude that the amount in controversy is met, *defendant is not charged with notice of removability absent the receipt of a paper indicating the amount demanded by the putative class as a whole*.")

In sum, the Court finds that because the Defendants' assumptions as to the violation rates are unreasonable, the Court rejects them and concludes that the Defendants have failed to meet their burden of showing by preponderance of the evidence that the amount in controversy is over $5,000,000.

/ / /

/ / /

**III.**      <u>**Conclusion**</u>

For the foregoing reasons, Plaintiffs' Request for Judicial Notice is GRANTED and Plaintiffs' Motion to Remand is GRANTED. This matter is remanded to the Los Angeles County Superior Court forthwith.


IT IS SO ORDERED.


Dated: September 18, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge